IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JORDAN ARMSTRONG,

　　*Plaintiff*,

　　v.

NATIONAL SHIPPING COMPANY
OF SAUDI ARABIA, *et al*.,

　　*Defendant*s.

Civil Action No. ELH-13-03702

## MEMORANDUM

Plaintiff Jordan Armstrong, a longshoreman, has brought suit against eight defendants pursuant to the admiralty and maritime jurisdiction of the court and common law, alleging negligence, breach of implied warranty, and liability under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq.  *See* ECF 20 ("Amended Complaint").[1]  The defendants are National Shipping Company of Saudi Arabia ("National Shipping"); JBH Worldwide, LLC ("JBH"); Reem Heavy Equipment, Ltd. ("Reem"); Hertz Equipment Rental Corp. ("Hertz"); Wallis Concrete, LLC ("Wallis"); Shoppa's Material Handling Management, LLC ("Shoppa's"); IronPlanet, Inc. ("IronPlanet"); and Shippers Stevedoring Company ("SSC"). Plaintiff alleges that, on or about June 10, 2013, while he was working as a longshoreman at the Port of Baltimore, servicing a ship called the *M/V Saudi Tabuk*, *see id*. ¶¶ 6, 8, he suffered severe bodily injury after being struck by a forklift that was improperly loaded on the ship.  *Id*. ¶¶ 19,

---

[1] Plaintiff filed his initial complaint on December 6, 2013.  *See* ECF 1.  The Amended Complaint, filed on August 26, 2014, *see* ECF 20, is the operative pleading.

27.  Plaintiff seeks to hold defendants collectively responsible for approximately $13,000,000 in damages.  ECF 20 at 10, 13, 16.

Defendant SSC has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), claiming lack of personal jurisdiction.  *See* ECF 28 ("Motion") and ECF 28-1 (supporting memorandum) (hereinafter, collectively, the "Motion").  SSC's Motion is supported by an affidavit from SSC's Vice President of Risk Management, Leonard Clark.  *See* ECF 28-2 ("Clark Aff.").  Plaintiff opposes the Motion (ECF 41, "Opposition"), and requests the following relief, *id*. at 13 (emphasis added):

> a.     That the Defendant Shipper Stevedoring Company's Motion to Dismiss be denied; *or*, in the alternative,
>
> b.     That this court *reserve judgment* on the issue of jurisdiction pending completion of discovery in this matter; *or*, in the alternative,
>
> c.     That Plaintiff be granted *leave to amend* his Complaint, *or*, in the alternative,
>
> d.     That the Plaintiff be permitted to *transfer* the above-captioned case, or any necessary part thereof, to the proper jurisdiction; and
>
> e.     That the Petitioner be granted such other and further relief as the nature of his cause may require.

SSC replied to plaintiff's Opposition on November 3, 2014 (ECF 46, "Reply").  In addition, SSC provided a supplemental affidavit from Mr. Clark (ECF 41-1, "Clark Supp. Aff.").

With the exception of plaintiff's request to transfer, the issues have been fully briefed.  No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I am satisfied that this court lacks personal jurisdiction as to SSC.  However, I will hold SSC's Motion in abeyance pending amplification of plaintiff's request to transfer.

- 2 -

**Factual Background**

At the time of plaintiff's injury, plaintiff was a longshoreman working at the Port of Baltimore in Maryland.   ECF 20 ¶¶ 19–20; *see also* ECF 41 at 3.   SSC, which provides stevedoring services, is a Texas corporation with its principal place of business in Houston, Texas.   ECF 20 at ¶ 10; *see also* ECF 28-1 at 3.   On or about June 10, 2013, SSC provided stevedoring services at the Port of Houston.   *See* ECF 20 ¶¶ 10, 19.   The services included the loading of a forklift onto a vessel, the *M/V Saudi Tabuk*.   ECF 28-2, Clark Aff. ¶ 8; *see also* ECF 41 at 3.   With the forklift aboard, the *M/V Saudi Tabuk* travelled from the Port of Houston to the Port of Baltimore.   ECF 20 ¶ 11.   Plaintiff was among those responsible for servicing the ship in Baltimore.   *See id.* ¶ 19.   In the process of servicing the vessel, plaintiff was injured.   *Id.* ¶¶ 19, 31, 37.

Plaintiff maintains that the accident was due in large part to a mechanical defect in the forklift's emergency brake system.   *See id.* ¶ 14.   He alleges: "A post-accident inspection of the forklift … revealed that the [forklift's] emergency brake cable had previously been stretched beyond the adjustment limits causing the brake shoes not to put full pressure on the drums allowing the wheels to rotate with the parking brake applied."   ECF 20 ¶ 14.

In his Amended Complaint, plaintiff alleges that defendants were negligent with regard to the maintenance, handling, and transport of the allegedly defective forklift.   *See generally* ECF 20.   Generally, plaintiff alleges that Hertz previously owned the forklift, knew of its defect, yet sold it without any warning, *id.* ¶ 15; Reem sold the forklift, but is also the "ultimate recipient/buyer", *id.* ¶ 13; Shoppa's owns the auction yard from which the defective forklift was transported, *id.* ¶ 17; IronPlanet operated the auction house that handled the sale of the defective

forklift, *id.* ¶ 18; Wallis transported the forklift from the auction yard to the Port of Houston, *id.* ¶ 16; National Shipping owned the *M/V Saudi Tabuk*, *id.* ¶ 8; SSC served as the stevedore company for the Port of Houston at the relevant time, *id.* ¶ 10; and JBH transported the forklift from Texas to Maryland, *id.* ¶ 11.  According to plaintiff, "all Defendants regularly conduct business within the State of Maryland and/or served to place the defective forklift into the stream of commerce with reasonable foreseeability that same may ultimately enter the State of Maryland." *Id.* ¶ 3.

In its Motion, SSC contends that this Court lacks personal jurisdiction as to SSC.  *See* ECF 28.  SSC's Vice President of Risk Management, Leonard Clark, provided the following facts in support of SSC's challenge to the jurisdiction of this Court, ECF 28-2, Clark Aff. ¶¶ 3–8:

> 3.      SSC is in the business of providing stevedoring and marine terminal operations at the Port of Houston, and occasionally in Beaumont, and other cities within Texas.  SSC only provides services in Texas, although in previous years SSC also provided stevedoring services in Louisiana and South Carolina.

> 4.      SSC does not manufacture, distribute or sell any goods.

> 5.      SSC does not now, nor has it ever provided any services in the State of Maryland.  SSC does not now, nor has it ever had any representatives, employees or agents in Maryland.

> 6.      SSC does not advertise in any publications distributed in Maryland.  SSC does not solicit business from Maryland … .

> 7.      SSC does not direct, control, [or] determine … the ultimate destination of the cargo it loads on ships, and SSC has no control over the routes of the vessels it loads, or the ports that the vessels it loads might call upon on their way to their ultimate destinations.

> 8.      With respect to the Complaint filed by Jordan Armstrong … SSC loaded the forklift referenced in the Complaint onto the M/V *Saudi Tabuk* in Houston, Texas.  SSC did not direct, control or determine the destination of the

forklift.  After loading and securing the forklift, SSC had no further involvement or responsibility regarding the transport or delivery of the forklift. …

Plaintiff counters that, "but for the actions of SSC placing the forklift onto the *M/V Saudi Tabuk*, the forklift would not have left the State of Texas and traveled to the State of Maryland where the Plaintiff suffered his injuries."  ECF 41 at 9.  Further, plaintiff avers that SSC "receive[s] substantial revenue through placing goods onto vessels with the intent of them entering the stream of commerce where they frequently enter Maryland through the Port of Baltimore."  *Id.* at 13.  And, plaintiff states that "SSC appears to have several principles [sic] and affiliates providing stevedoring … and related businesses … throughout the United States."  *Id.* at 3–4.

Additional facts are included in the Discussion.

## Legal Standard

A motion to dismiss for lack of personal jurisdiction arises under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence."  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  "If the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question."  *Id.* at 676.

A court may, in its discretion, permit discovery as to the jurisdictional issue.  *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993).  However, neither discovery nor an evidentiary hearing is required to resolve a motion under Rule 12(b)(2).  *See generally* 5B

WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1351 at 274–313 (3d ed. 2004, 2011 Supp.).   Rather, the district court may address the question of personal jurisdiction as a preliminary matter, ruling solely on the basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint.  *Consulting Eng'rs Corp. v. Geometric Ltd*., 561 F.3d 273, 276 (4th Cir. 2009).  In that circumstance, the plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge."  *Id.*

"In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff."  *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396 (4th Cir. 2003).   But, "district courts are not required to look solely to the plaintiff's proof in drawing those inferences."   *Mylan Laboratories*, 2 F.3d at 62.  And, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'"  *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (emphasis in original) (citation omitted).

### Discussion

Fed. R. Civ. P. 4(k)(1) authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state in which the district court is located. *Carefirst of Maryland*, 334 F.3d at 396.   Therefore, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment."  *Id.*

Maryland's long-arm statute is codified at Md. Code (2013 Repl. Vol.), § 6–103(b) of the Courts & Judicial Proceedings Article ("C.J.").  It authorizes "personal jurisdiction over a person, who directly or by an agent," *id.*:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>
> (5) Has an interest in, uses, or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals.  *See Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F2d 649 (4th Cir. 1985); *accord Mylan Laboratories*, 2 F.3d at 61.  Regarding the interaction between the two conditions for personal jurisdiction, the Maryland Court of Appeals has stated: "Because we have consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution, our statutory inquiry merges with our constitutional examination."  *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1,

- 7 -

15, 878 A.2d 567, 576 (2005) (citing *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977)).

Some courts have interpreted this "merges with" language to mean that "the two inquiries essentially become one." *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996); *accord ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002). To be sure, "the reach of the [long-arm] statute is as far as due process permits …" *Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 141 n.5, 892 A.2d 479, 493 n.5 (2006). However, the Maryland Court of Appeals has also clarified that the statutory analysis remains a requirement of the personal jurisdiction analysis. In *Mackey*, the Maryland Court of Appeals said, 391 Md. at 141 n.6, 892 A.2d at 493 n.6 (citations omitted):

> We stated recently in *Beyond v. Realtime* … that "the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." We did not, of course, mean by this that it is now permissible to simply dispense with analysis under the long-arm statute. … Rather … we interpret the long-arm statute to the limits permitted by the Due Process Clause when we can do so consistently with the canons of statutory construction.

Since *Mackey*, the Maryland Court of Appeals has repeatedly affirmed that "determining whether a Maryland court may exercise personal jurisdiction over a foreign defendant requires a *two-step* analysis." *Bond v. Messerman*, 391 Md. 706, 721, 895 A.2d 990, 999 (2006) (emphasis added); *see also CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 983 A.2d 492, 501 (2009) (stating that personal jurisdiction analysis "entails *dual* considerations") (emphasis added). "First, we consider whether the requirements of Maryland's long-arm statute are satisfied." *CSR*, 411 Md. at 472, 983 A.2d at 501 (citing *Bond*, 391 Md. at 721, 895 A.2d at 999; *Mackey*, 391 Md. at 129, 892 A.2d at 486; *Beyond*, 388 Md. at 14, 878 A.2d at 576). "Second, we consider whether the

exercise of personal jurisdiction comports with the requirements imposed by the Due Process Clause of the Fourteenth Amendment." *CSR,* 411 Md. at 47, 983 A.2d at 501 (citing *Bond,* 391 Md. at 721, 895 A.2d at 999; *Beyond,* 388 Md. at 15, 878 A.2d at 575).

Accordingly, I will begin the personal jurisdiction analysis by looking to Maryland's long-arm statute. However, "the long-arm statute must still be examined as part of the two-step personal jurisdiction analysis." *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp.2d 790, 796 (D. Md. 2011) (Bennett, J.) (citing *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n.6, 892 A.2d 479, 493 n.6 (2006)).

### A.  Maryland's Long-Arm Statute

Plaintiff argues that this Court's exercise of personal jurisdiction over SSC is consistent with statutory requirements. ECF 41 at 6. Specifically, plaintiff invokes two provisions of Maryland's long-arm statute that pertain to "personal jurisdiction over a person, who directly or by an agent," C.J. § 6–103(b) (emphasis added):

> (2) Contracts to *supply* goods, food, services, or manufactured products in the State; [or] …

> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives *substantial revenue* from goods, food, services, or manufactured products used or consumed in the State;

Further, C.J. § 6–103(a) provides: "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section."

Turning first to C.J. § 6–103(b)(2), plaintiff's argument under that subsection is meritless. Plaintiff notes that Maryland's long-arm statute establishes personal jurisdiction over a non-resident defendant who "[c]ontracts to supply goods … in the State," and asserts: "Defendant

- 9 -

does actively participate in supplying the goods received in Maryland through the Port of Baltimore through the Defendant's stevedoring services." ECF 41 at 7.  However, this Court can find no authority—and plaintiff cites none—that defines those who "supply" goods or services in-state under subsection (b)(2) to include those whose only connection to the goods is to prepare them for shipment by way of services rendered entirely out of state.

*McKown v. Criser's Sales & Serv.*, 48 Md. App. 739, 430 A.2d 91 (1981), provides guidance.  In that case, plaintiff, a Maryland resident, bought a defective car from a car dealer located in Virginia, and the car allegedly caused injuries in Maryland.  *Id*. at 740, 430 A.2d at 93. Plaintiff sued the car dealer in Maryland.  *See id.*  In regard to personal jurisdiction, plaintiff argued that subsection (b)(2) of the Maryland long-arm statute was satisfied because the car dealer supplied her with the car that caused tortious injury in Maryland, and the car dealer derived substantial revenue from goods used in Maryland.  *Id.* at 743, 430 A.2d at 95.  The Maryland Court of Special Appeals rejected this argument, noting that "Subsection (b)(2) authorizes jurisdiction over persons who contract to supply goods, services or manufactured products '*in the State*.'"  *Id.* at 743 n.2, 430 A.2d at 95 n.2 (emphasis added).  The car in *McKown* was sold in Virginia, not Maryland, and the court found that the car dealer "did not contract to supply anything in the State of Maryland.  Therefore, subsection (b)(2) [was] not applicable."  *Id.*

Here, defendant's contact with goods bound for Maryland is even more attenuated than it was for the car dealer in *McKown*.  SSC does not sell any goods that might end up in Maryland—indeed, it does not sell any goods at all.  ECF 28-2, Clark Aff. ¶ 4.  As plaintiff concedes, SSC is not a manufacturer or transporter of goods.  ECF 41  at 7.  And, like the

defendant in *McKown*, SSC's business activities took place entirely out of state; SSC insists that it "does not now, nor has it ever provided any services in the State of Maryland," ECF 28-2, Clark Aff., and as explained, *infra*, plaintiff fails to offer any credible basis to dispute this claim. As such, subsection (b)(2) of the long-arm statute is not satisfied.

Alternatively, plaintiff maintains that defendant satisfies C.J. § 6–103(b)(4).  *See* ECF 41 at 6–7.  Armstrong asserts that "vessels serviced by SSC in Texas ports frequently travel into Maryland due to the geographic location of the Port of Baltimore," and "but for goods being shipped from the Port of Houston … to the State of Maryland … Defendant SSC would suffer substantial losses in revenue."  *Id.*

Even assuming that SSC's out-of-state actions caused plaintiff to be injured in Maryland, plaintiff's reliance on subsection (b)(4) is unavailing.  Although it is arguably true that a demand for goods in Maryland could indirectly benefit SSC by increasing the business it does with companies that sell goods to Marylanders, SSC itself does not derive revenue "from" those goods.  Rather, as defendant observes, SSC is paid for its loading services, which are rendered in Texas, not Maryland, and its fees are earned without regard to the destination of the vessels. ECF 46  at 2.  In addition, SSC insists, and plaintiff does not dispute, that SSC "does not manufacture, distribute, or sell any goods," ECF 28-2, Clark Aff. ¶ 4, or otherwise "play any part" in determining the destination of the goods it loads.  *Id.* ¶ 7.  Nevertheless, without citing any case law, plaintiff urges this Court to overlook a clear requirement for long-arm jurisdiction under subsection (b)(4)—that defendant "derive[] substantial revenue *from* goods … [or] … services … used or consumed in the State."  C.J. § 6–103(b)(4) (emphasis added).

In *McKown*, *supra*, 48 Md. App. 739, the court focused on the "substantial revenue" component of C.J. § 6–103(b)(4).  The court discussed, *inter alia*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), and, quoting from that decision, said:   "'[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State.  …  In our view, whatever marginal revenues petitioners may receive by virtue of the fact that their products are capable of use in Oklahoma is far too attenuated a contact to justify that State's exercise of in personam jurisdiction over them.'"  *McKown*, 48 Md. App. at 747, 430 A.2d at 97 (quoting *Woodson*, 444 U.S. at 299).

That rationale applied in *McKown*, and it applies here.  Accordingly, subsection (b)(4) of the statute is not satisfied here.

### B.  Due Process

The exercise of personal jurisdiction over SSC also fails to comport with constitutional Due Process.

The United States Supreme Court has long held that personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Due process jurisprudence recognizes "two types of personal jurisdiction: general and specific."  *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009).  The difference between the two turns on the nature and extent of the

contacts with the forum state that are necessary to meet the "minimum contacts" threshold.  The

Fourth Circuit has explained, *id.*:

> General personal jurisdiction, on the one hand, requires "continuous and systematic" contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred. Specific personal jurisdiction, on the other hand, requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state.

*Id.* (citing, *inter alia*, *Helicopteros Nacionales de Colombia*, *S.A. v. Hall*, 466 U.S. 408, 414–15

(1984)) (internal citations omitted); *see also Goodyear Dunlop Tires Operations*, *S.A. v.*

*Brown*, ––– U.S. ––––, 131 S. Ct. 2846, 2851 (2011) (explaining that a court may exercise general

jurisdiction to hear "any and all claims" against a corporation "when their affiliations with the

State are so 'continuous and systematic' as to render them essentially at home in the forum

State," whereas specific jurisdiction "depends on an 'affiliatio[n] between the forum and the

underlying controversy.'" (citations omitted) (alteration in original)).

To determine whether the due process requirements for asserting specific jurisdiction

have been met, a court considers: "(1) the extent to which the defendant has purposefully availed

itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise

out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction

would be constitutionally reasonable."  *Consulting Eng'rs*, 561 F.3d at 278 (citing *ALS Scan*, 293

F.3d at 715); *see also Carefirst of Maryland*, 334 F.3d at 397.

"The first prong articulates the minimum contacts requirement of constitutional due

process that the defendant purposefully avail himself of the privilege of conducting business

under the laws of the forum state."  *Consulting Eng'rs*, 561 F.3d at 278.  "Th[e] 'purposeful

availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted); *see also ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012). To satisfy the second prong of the test for specific jurisdiction, a defendant's contacts with the forum state must form the basis of the suit. *Consulting Eng'rs*, 561 F.3d at 278–79. The constitutional reasonableness inquiry permits a defendant "who purposefully has directed his activities at forum residents" to defeat jurisdiction, if he can "present a compelling case that the presence of some other considerations would render jurisdiction unconstitutional." *Burger King*, 471 U.S. at 477. "This prong of the analysis ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 303 (4th Cir. 2012) (quoting *CFA Inst.*, 551 F.3d at 296) (internal quotation marks omitted), *cert. denied*, —— U.S. ——, 133 S. Ct. 846 (2013).

In contrast, "the threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *ALS Scan*, 293 F.3d at 715 (internal quotation marks omitted); *accord Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). The Fourth Circuit has long held that "broad constructions of general jurisdiction" are "generally disfavored." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993). Recently, in *Daimler AG v. Bauman*, ——U.S. ——, 134 S. Ct. 746, 760 (2014), the Supreme Court made clear that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." In particular, "the inquiry

- 14 -

under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 761 (quoting *Goodyear*, 131 S. Ct. at 2851) (alteration in original).

### 1. Purposeful Availment Analysis

Neither side argues that this Court has general jurisdiction over SSC.  Indeed, SSC asserts that it has "virtually no contacts with Maryland, and certainly has not directed any of its business activities into Maryland or received any direct benefit from Maryland such that SSC can be said to have 'purposefully availed itself of the privilege of conducting activities in this State.'"  ECF 46 at 5.

SSC cites a number of factors that, in its view, demonstrate a lack of Maryland contacts: SSC maintains no offices in Maryland, ECF 28-1 at 10; SSC is not registered to do business in Maryland, *id.*; SSC has no registered agent for service of process in Maryland, *id.*; SSC has never performed services in Maryland, ECF 28-2, Clark Aff. ¶ 5; SSC has no employees or representatives in Maryland, *id.*; SSC does not advertise or solicit business in Maryland, *id.* ¶¶ 6–7; and SSC has no role in determining whether or when goods it handles will be directed to Maryland, *id.* ¶ 8.

Plaintiff does not dispute these assertions.  Rather, plaintiff argues, ECF 41 at 9, that (emphasis added):

> Defendant had *actual knowledge*, through the Bill of Lading, that the vessel and therefore the cargo which the Defendant was loading onto said vessel, would be traveling to the State. Therefore, through its active participation in the process, Defendant SSC substantially contributed to placing the forklift in the *stream of commerce* and, thus, *purposefully availed* itself to forum state.

- 15 -

The Maryland Court of Appeals rejected a similar argument in *CSR, Ltd. v. Taylor*, *supra*, 411 Md. 457, 983 A.2d 492.  In *CSR*, plaintiffs were the estates of stevedores who died from mesothelioma allegedly caused by exposure to asbestos products shipped by defendant, CSR, an Australia-based distributor of asbestos.  *Id.* at 463–64, 983 A.2d at 495–96.  In their product liability action against CSR, plaintiffs argued that in personam jurisdiction over CSR was proper because, *inter alia*, CSR purposely used the Port of Baltimore as a "conduit" for distributing its asbestos product to buyers in other states.  *Id.*

In a four to three decision, the Maryland Court of Appeals concluded that CSR had not "purposely availed" itself of Maryland—even though it intentionally used the Port of Baltimore as a distribution point—because CSR had not shipped any asbestos product to Maryland consumers and because it was CSR's customers, not CSR, that decided that the product would be brought into the country via the Port of Baltimore.  *Id.* at 478–88, 983 A.2d at 510.  The court reasoned: "[W]e do not consider cargo 'introduced into the stream of commerce with the expectation that it w[ill] arrive in th[e] forum,' sufficient to constitute purposeful availment." *CSR*, 411 Md. at 484–85, 983 A.2d 507–08 (citation omitted) (some alterations in original). Further, the court said: "Mere foreseeability that a defendant's products will enter the State and cause injury here is insufficient. …  Rather, the defendant must 'create a substantial connection' with Maryland such that having to defend a lawsuit in the State would be foreseeable."  *Id.* (quoting *Burger King*, 471 U.S. at 475).

In sum, the court concluded that CSR's actual knowledge that its shipments would pass through the Port of Baltimore and would be handled by Maryland stevedores did not show "purposeful availment."  *Id.* at 486–494, 983 A.2d 509–13.

- 16 -

Like the defendant in *CSR*, SSC was not responsible for determining where to ship the item (here, a forklift) that injured plaintiff.  ECF 28-2, Clark Aff.  ¶ 7; ECF 46  at 2.  And, unlike the defendant in *CSR*, SSC had no part in physically transporting the item to Maryland.  ECF 41 at 7.  Taken together, the record shows that SSC's contacts with Maryland are even more attenuated than they were for the defendant in *CSR*.

### 2.  SSC's Alleged "Affiliates"

Given SSC's lack of direct contacts with Maryland, plaintiff nevertheless argues that the exercise of personal jurisdiction would be proper because "SSC appears to have several principles [sic] and affiliates providing stevedoring … and related businesses … throughout the United States."  ECF 41 at 3–4.

In *Burger King*, *supra*, 471 U.S. 462, the Supreme Court observed that, in an "'appropriate case,'" a court "may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'"  471 U.S. at 477 (quoting *Woodson*, 444 U.S. at 292).  Those factors, the *Burger King* Court acknowledged, "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."  471 U.S. at 477.  However, such factors are to be considered "[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State …"  *Id.* at 476.  That showing has not been made.

- 17 -

In the Disclosure of Corporate Interest statement that SSC provided to this Court, SSC states that it has an ownership interest in the following companies: Barbours Cut Intermodal Services, Ltd. (in which SSC holds a 50% stake); G.P. Terminals, LLC; Texas Transload and Logistics, LLC; and Barbours Cut Truck Office, Inc.  *See* ECF 45, Corporate Disclosure; ECF 46-1, Clark Supp. Aff. ¶¶ 3–9.  Plaintiff  argues that SSC may also control or be affiliated with other companies, which allegedly include "The Cooper Group of Companies" and "Cooper T./Smith" [sic] (collectively, "Cooper"), "Barbours Cut Intermodal," and "D L Peterson Trust." ECF 41 at 3–5.  Plaintiff argues that these companies may be subsidiaries of SSC, and may have jurisdictionally significant contacts with Maryland, which may in turn implicate SSC.  *Id*.

Contacts of a corporate subsidiary are generally not imputed to a parent entity.  *Northrop Grumman*, 427 F.3d 271, 276 (4th Cir. 2005).  But, when a parent company exerts considerable control over activities of the subsidiary, Maryland's "agency" test allows courts to attribute actions of the subsidiary to the parent.  *Mylan Laboratories*, 2 F.3d at 61.  Factors which tend to indicate that the parent company exerts such control include whether significant decisions of the subsidiary must be approved by the parent; whether parent and subsidiary maintain separate books and records and hold separate director's meetings; and the level of interdependence between them.  *Id*.

This Court need not analyze this argument in depth, however.  As shown below, plaintiff has not provided facts from which this Court may reasonably infer the existence of subsidiaries with Maryland contacts.

As to Cooper, Mr. Clark admits that SSC and Cooper are joint owners of a holding company called Barbours Cut Intermodal Services, Ltd., but maintains that the partnership is

strictly for the purpose of "conduct[ing] marine terminal operations *in Houston*."   ECF 46-1, Clark Supp. Aff. ¶ 5 (emphasis added).   Plaintiff, on the other hand, argues that Cooper may have Maryland contacts, and attaches three exhibits in support.   ECF 41 at 4; *see generally* ECF 48-2; ECF 48-3; ECF 48-4.

The first exhibit is a screenshot from Cooper's website.   Within that screenshot, plaintiff refers to a sentence under the "Break Bulk" heading, which states the following: "With state-of-the-art equipment and automation, we move break bulk cargo with ease and efficiency.   All neo-bulk products are handled by Cooper/T. Smith on all three coasts of the United States."   *See* ECF 48-2 at 1.   Plaintiff also points to a statement near the bottom of the page, as follows: "[W]e can partner with any of our many contacts all over North America to help you find the best solution to your transportation challenges."   *Id.*   These broad, generalized statements that Cooper's services are available "on all three coasts," and that the company has contacts "all over North America," hardly show that Cooper, let alone SSC, has minimum contacts with Maryland.   *See id.*

As further evidence of Cooper's alleged connection to Maryland, plaintiff attaches an article from JOC.com titled, "COOPER/T. SMITH GOING IT ALONE IN BALTIMORE," (ECF 48-3), as well as a pair of corporate filings with the Maryland State Department of Assessments and Taxation ("SDAT") by "Cooper/T. Smith Stevedoring Company, Inc." and "Cooper/T. Smith Corporation" (ECF 48-4).   Again, these exhibits are of no help to plaintiff's argument.   Although the article does say that Cooper "is now providing independent services to the Port of Baltimore," the article is from 1994.   ECF 48-3.   And, as defendant correctly points out, Cooper/T. Smith Stevedoring Company's SDAT registration was forfeited in 2000 and

Cooper/T. Smith Corporation was terminated in 2007, long before the events giving rise to plaintiff's Complaint.  *See* ECF 46-2; ECF 48-4 at 1–2, 5.

Plaintiff also states that "SSC uses several name variations including several adaptations of the name 'Barbours Cut Intermodal.'"  ECF 41 at 4; *see also* ECF 48-5, Accurint "Comprehensive Business Report," dated October 16, 2014.  As noted, SSC owns a 50% interest in a company called "Barbours Cut Intermodal Services, Ltd.," or "BCIS."  *See* ECF 45, Disclosure; ECF 46-1, Clark Supp. Aff. ¶ 5.  However, SSC insists that "BCIS does not conduct any business whatsoever in Maryland."  And, plaintiff fails to explain the significance of SSC's relationship to Barbours Cut, stating only: "Intermodal freight transport involves the transportation of freight in an intermodal container or vehicle, using multiple modes of transportation."  ECF 41 at 4.

Finally, plaintiff argues that "SSC appears to currently have several associated business [sic] in other states including Maryland.  By way of example, SSC is associated with D L Peterson Trust located at 307 Cockeysville, MD 21030-1321."  *Id.* at 5.  In support of this assertion, plaintiff points to a section in the aforementioned Accurint report for "Associated Businesses."  ECF 48-5 at 3.  Underneath that heading, there is indeed a business called "D L Peterson Trust" that is located in Maryland.  *Id.*  However, the meaning of this association is far from clear.  Neither plaintiff nor the report explains what it means to be an "Associated Business."  *See generally* ECF 41 at 5; ECF 48-5.  SSC maintains that it has "no affiliation, association or relationship of any type with D L Peterson Trust."  ECF 41-1, Clark Supp. Aff. ¶ 9.  And, indeed, the inclusion of "D L Peterson Trust" in a list that also includes entities such as "American Express Business Fin. Corp" in Illinois, "Bank of America, N.A." in Texas,

"Citicorp Leasing, Inc." in New York, and "General Electric Capital Corporation" in Montana—as well as 17 other entities—fails to suggest that D L Peterson Trust is somehow controlled by SSC.  ECF 48-5 at 3.

In sum, I am not persuaded that plaintiff has identified any ground permitting this Court to exercise personal jurisdiction over SSC.  The record is devoid of facts from which sufficient minimum contacts with Maryland may be reasonably inferred.   Therefore, the exercise of personal jurisdiction would not be constitutionally reasonable.  *See Camelback Ski Corp. v. Behning (Camelback I)*, 307 Md. 270, 274, 513 A.2d 874, 876 (1986), *vacated*, 480 U.S. 901 (1987), *aff'd*, *Camelback Ski Corp. v. Behning (Camelback II)*, 312 Md. 330, 539 A.2d 1107 (1988) (noting that the fairness factors "cannot alone serve as the foundation for assumption of jurisdiction") (citing *Woodson*, 444 U.S. at 294; *Hanson v. Deckla*, 357 U.S. 235, 251 (1958)).

Judges in other federal district courts who have addressed the question of personal jurisdiction over out-of-state stevedores have come to the same conclusion.  For example, in *Carefree Cartage, Inc. v. "K" Line*, 06-C-2644, 2006 WL 3227892, at *1 (N. D. Ill., Nov. 2, 2006), defendant Husky, a stevedore company, loaded a container of hazardous chemicals onto a train in Washington State that ultimately arrived in Illinois and caused a chemical spill there. The plaintiff sued Husky in Illinois, arguing that jurisdiction was proper even though Husky did not transact any business in Illinois and did not control, direct, or determine the destination of the chemicals.  *Id.* at *3.   The court granted Husky's motion to dismiss for lack of personal jurisdictional, reasoning, *id.* at *4:

> Stevedores are paid to load and unload cargo, a job that begins and ends in the port.  Although one could argue that the stevedores benefit from the general demand for goods that originates in a destination state, which thereby creates more business for them at the port, that connection is too tangential to support a

finding that they purposefully availed themselves of the benefits of doing business in that state. *Burger King*, 271 U.S. 462, 473-74 (citing *Kulko v. California Superior Ct.*, 436 U.S. 84, 96 (1978)).  Husky's ability to foresee that harm might occur in Illinois due to reckless treatment of cargo in Washington is not enough by itself for this court to exercise jurisdiction over Husky.  Instead, Carefree needed to allege that Husky received some benefit from Illinois, that it enjoyed the privilege of conducting activities here or that it was protected by Illinois laws. Because Carefree cannot do so, this court in turn cannot say that Husky had the requisite minimum contacts with this state to support an exercise of personal jurisdiction over Husky.

In *Eggear v. Shibusawa Warehouse Co.*, 2001 WL 267881, at *1 (E.D. Pa. Mar. 19, 2001), plaintiff was a Pennsylvania citizen who was injured while unloading steel pipes that were loaded onto a cargo ship by a Japanese stevedoring company, Shibusawa.  In granting Shibusawa's motion to dismiss, the court held that defendant may not be subjected to personal jurisdiction simply because it knew that ships that it loaded were bound for Pennsylvania, especially where defendant had no interest in or control over the ultimate destination of the pipes.  *Shibusawa*, 2001 WL 267881, at *4.  *See also In re Nat'l Marine*, 96–3144, 97–2348, 1998 WL 43139, at *1 (E.D. La. Jan. 30, 1998) (due process did not permit Louisiana court to exercise jurisdiction over Illinois defendant whose only connection to the case was loading cargo on to a barge in Illinois); *Irby v. Isewan Terminal Serv. Co. Ltd.*, 90–22010, 1991 WL 275590, *2–3 (E.D. Pa. Dec. 18, 1991) (no personal jurisdiction over Japanese stevedoring company where it merely loaded cargo in Japan and had no control over its destination).

In sum, for the foregoing reasons, plaintiff has failed to make a prima facie showing that this Court has personal jurisdiction over SSC.

### C.  Jurisdictional Discovery

As an alternative to granting SSC's Motion, plaintiff asks this Court to "reserve judgment on the issue of jurisdiction pending completion of discovery."  ECF 41 at 13.  Specifically, plaintiff argues that further jurisdictional discovery is needed because "SSC appears to have several principles [sic] and affiliates," *id.* at 3, and "several associated business [sic] in other states" that may have jurisdictionally significant contacts with Maryland.  *See id.* at 5, 11–13.  As noted, these companies include Cooper, Barbours Cut Intermodal, and D L Peterson Trust.  *Id.* at 3–5.  For the reasons that follow, this request will be denied.

"Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted."  *Mylan Laboratories*, 2 F.3d at 64.  However, district courts "'have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them].'"  *Carefirst of Maryland*, 334 F.3d at 402 (quoting *Mylan Laboratories*, 2 F.3d at 64) (alterations in *Mylan Laboratories*).  "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."  *Carefirst of Maryland*, 334 F.3d at 402 (citing *McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983) (holding that district court did not abuse its discretion in denying jurisdictional discovery when, "[a]gainst the defendants' affidavits," plaintiff "offered nothing beyond his bare allegations that the defendants had had significant contacts with the [forum] state of Maryland" (internal quotation marks omitted)); *ALS Scan*, 293 F.3d at 716 n.3 (upholding district court's refusal to allow plaintiff to engage in jurisdictional discovery where plaintiff's request was based on "conclusory assertions")).

In some cases, where a plaintiff has either established a prima facie case, or the record contains some indicia of personal jurisdiction, limited jurisdictional discovery may be warranted. *See*, *e.g.*, *Combs*, 886 F.2d at 676–77 (defendants' solicitations to investors in the forum state were sufficient to establish a prima facie case for jurisdiction); *Androutsos v. Fairfax Hosp.*, 323 Md. 634, 649–50, 594 A.2d 574 (1991) (defendant's advertisement directed at forum state was indicia of personal jurisdiction).  But, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition."  *Carefirst of Maryland*, 334 F.3d at 403 (citation omitted); *see Unspam Technologies*, *Inc. v. Chernuk*, 716 F.3d 322, 330 n.1 (4th Cir. 2013) (suggesting that the court did not abuse its discretion in denying jurisdictional discovery based on conclusory allegations of personal jurisdiction).

In this case, jurisdictional discovery is not appropriate.  As discussed, plaintiff has not set forth a prima facie case for personal jurisdiction.  The record lacks any credible indicia of minimum contacts, either by SSC or its alleged affiliates.  Although this Court "must take all disputed facts and reasonable inferences in favor of the plaintiff," *Carefirst of Maryland*, 334 F.3d at 396, it is "not required to look solely to the plaintiff's proof in drawing those inferences." *Mylan Laboratories*, 2 F.3d at 62.  In the face of SSC's "specific denials," under oath, plaintiff offers only "speculation" and "conclusory assertions" about SSC's alleged contacts with Maryland.  *Carefirst of Maryland*, 334 F.3d at 402; *see*, *e.g*., ECF 41 at 3–5, 11–13; ECF 28 ¶¶ 3–8; ECF 45; ECF46-1 ¶¶ 3–9.  Accordingly, I will deny plaintiff's request for jurisdictional discovery as an alternative to ruling on the issue of personal jurisdiction.

### D.  Transfer

The only remaining question is whether plaintiff's claim against SSC should be dismissed or, instead, transferred to a court with personal jurisdiction over defendant.  In his Opposition, plaintiff requests permission to "transfer the above-captioned case, or any necessary part thereof, to the proper jurisdiction" if this Court determines that it lacks personal jurisdiction.  ECF 41 at 13.

When a district court finds it lacks personal jurisdiction, it has discretion under 28 U.S.C. § 1406(a) to transfer the case to an appropriate jurisdiction.  Title 28 U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."   "Section 1406(a) has been construed to permit transfers where personal jurisdiction is lacking in the transferor court, but would be available in an alternative forum."  *Northrop Grumman*, *supra*, 427 F.3d at 277; *see also Carefirst of Maryland, Inc. v. Carefirst Urgent Care Ctr., LLC*, 305 F.3d 253, 255-56 (4th Cir. 2002) ("Although its language suggests otherwise, section 1406(a) has been interpreted to authorize transfers in cases where venue is proper but personal jurisdiction is lacking or some other impediment exists that would prevent the  action from going forward in that district."); *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir. 1988) ("[W]e adopt as the rule in this circuit the reading of § 1406(a) that authorizes the transfer of a case to any district, which would have had venue if the case were originally brought there, for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district."); *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).  Thus, in deciding

whether transfer is appropriate, this Court must first examine whether plaintiff could sue SSC in another federal district court.

However, plaintiff does not specify the court to which he seeks transfer.  *See* ECF 41 at 13.  Thus, I cannot determine whether transfer would be appropriate.  *See*, *e.g.*, *Putz v. Golden*, No. CIV.A. 3:09-CV-00003, 2010 WL 597210, at *2 (W.D. Va. Feb. 18, 2010) ("Plaintiffs have not properly indicated where they would have [the case] transferred.  It would be inappropriate for me to transfer the case to my choice between the Western District of Washington or the Southern District of New York, when Plaintiffs could have expressed a clear preference for one or the other.").  Accordingly, if plaintiff seeks a transfer, he is directed to file a Motion to Transfer within 17 days from the date of docketing of this Memorandum and Order.  The Motion must specify a transferee court and the claims plaintiff seeks to transfer, and must also show that plaintiff's claims could have been brought originally in the proposed transferee court. Defendants are, of course, entitled to respond.

## Conclusion

For the foregoing reasons, I will hold SSC's Motion in abeyance, pending receipt of plaintiff's Motion to Transfer.  If no Motion to Transfer is filed within the time provided, I will enter an order dismissing the case as to SSC, without prejudice.

A separate Order follows, consistent with this Memorandum Opinion.

Date: February 20, 2015                                    _____/s/_____
                                                          Ellen Lipton Hollander
                                                          United States District Judge

- 26 -