United States District Court
Southern District of Texas
**ENTERED**
November 10, 2016
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **JORDAN ARMSTRONG,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:15-CV-868** |
| | § | |
| **NATIONAL SHIPPING COMPANY OF** | § | |
| **SAUDI ARABIA,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

In this personal injury case, Plaintiff Jordan Armstrong has alleged three causes of action—negligence under the Longshore and Harbor Workers' Compensation Act, breach of implied warranty, and common law negligence—against nine Defendants.

Pending before the Court are Motions for Summary Judgment filed by five of the nine Defendants—Robert Fischer, d/b/a Wallis Concrete Transport ("Fischer") (Doc. No. 194), National Shipping Company of Saudi Arabia (now known as Bahri) ("Bahri") (Doc. No. 229), Toyota Motor Credit Corporation ("Toyota") (Doc. No. 249), Shoppa's Material Handling Management, LLC ("Shoppa's") (Doc. No. 252), and IronPlanet, Inc. ("IronPlanet") (Doc. No. 257).

Also pending are Motions to Strike Plaintiff's Jury Demand filed by Bahri (Doc. No. 242), IronPlanet (Doc. No. 256), and Shippers Stevedoring Company ("Shippers") (Doc. No. 282), and Motions to Strike the Revised Report of Plaintiff's Testifying Expert filed by Toyota (Doc. No. 246), IronPlanet (Doc. No. 248), and Shoppa's (Doc. No. 253).

Finally, there are two Motions to Exclude the Testimony of Plaintiff's Expert, filed by IronPlanet (Doc. No. 251) and Shoppa's (Doc. No. 281).

1

After considering all of the Motions filed by Defendants, the responses thereto, and all applicable law, the Court determines that the Motions for Summary Judgment filed by Fischer, Bahri, Shoppa's and IronPlanet must be granted. Because these parties are dismissed from the lawsuit, the Motions to Strike Plaintiff's Jury Demand filed by Bahri and IronPlanet are denied as moot, as are the Motions to Strike the Revised Report of Plaintiff's Testifying Expert filed by IronPlanet and Shoppa's. The Motions to Exclude the Testimony of Plaintiff's Expert, filed by IronPlanet and Shoppa's are also denied as moot. Shippers' Motion to Strike Plaintiff's Jury Demand is denied. Toyota's Motion for Summary Judgment is partially denied.

## I.  BACKGROUND

### a.  The Accident

Plaintiff Jordan Armstrong worked as a longshoreman for Ports America Chesapeake in Baltimore, Maryland. (Doc. No. 260-1 at 2.) On June 10, 2013, Plaintiff was tasked with moving a forklift that had been stowed on an inclined ramp of the M/V Saudi Tabuk during its voyage from Houston to Baltimore. (*Id.*) Plaintiff and the other longshoremen were instructed to restow the forklift on the vessel's weather deck pursuant to a stowage plan provided by the vessel owners. (*Id.*) It is undisputed that the wheels of the forklift were not chocked[1] at the time the longshoremen approached. (Doc. No. 229 at 3-4.) Instead, six chains held the forklift in place— four on the uphill side and two on the downhill side. (*Id.*) Plaintiff testified that his crew confirmed that the parking brake was set on the forklift before beginning to unlash the chains. (*Id.*) While Plaintiff was preparing to remove the chains on the downhill side, his fellow longshoremen disengaged the uphill chains. (*Id.*) The forklift rolled down the inclined ramp,

---

[1] A chock is "a wedge or block for steadying a body (as a cask) and holding it motionless, for filling in an unwanted space, or for blocking the movement of a wheel." Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/chock.

2

pinning Plaintiff between the forklift and cargo stowed two or three feet downhill from the forklift. (*Id.*) Another longshoreman got into the forklift, turned it on, and backed it up a few feet to free Plaintiff, but when the longshoreman exited the forklift, it rolled down again. (Doc. No. 275-2 at 3.) By this time, however, Plaintiff had already fallen onto the deck, and the forklift came to a stop against the downhill cargo. (*Id.*)

### b. The Forklift

The forklift that injured Plaintiff was a 2008 Toyota model 7FDU80. (Doc. No. 249-1 at 1.) After it came "off-lease" in 2013, Toyota engaged a third-party contractor to inspect the unit. This third-party contractor, AutoVIN, inspected the forklift and concluded, in its report, that the parking brake was "not operational," but that the parking brake did have tension. (Doc. No. 276-8 at 2.) No other information about the parking brake was included in the report. Toyota then offered to sell the forklift to its dealers; the inspection report (hereinafter "Toyota Inspection Report") was made available to these dealers. (Doc. No. 249 at 4.) The forklift was considered for purchase by a Toyota dealer, Shoppa's, for use in a rental fleet. (Doc. No. 252 at 5.) However, after an inspection, Shoppa's determined that the cost of needed repairs combined with the purchase price was too high, and declined to purchase the forklift. (*Id.* at 6.) Shoppa's maintains that the parking brake was working when it was on Shoppa's lot, but that "it needed adjustment." (*Id.*) The forklift remained on Shoppa's lot while Toyota pursued other means of selling the forklift. (Doc. No. 257 at 6.)

Toyota then asked IronPlanet, an auction website with which Toyota had a contract, to auction the forklift. (*Id.* at 2.) Toyota did not make the Toyota Inspection Report available to IronPlanet. (*Id.* at 6.) Instead, an employee of IronPlanet conducted a "low functionality" inspection of the forklift on flat ground in a limited space. (*Id.* at 7.) Though the report

(hereinafter "IronPlanet Report") noted that the master cylinder/brake control was "noisy," the report also indicated that the parking brake "stopped the machine while rolling." (*Id.*) The IronPlanet Report was made available on the IronPlanet website, and the forklift was ultimately purchased from the website by Reem Heavy Equipment on May 2, 2013. (*Id.* at 8.)

Reem Heavy Equipment engaged JBH Worldwide, LLC to arrange for transportation of the forklift from Shoppa's lot in Ft. Worth, Texas to Saudi Arabia. (*Id.* at 9.) Fischer, d/b/a Wallis Concrete Transport, was selected to transport the forklift from Fort Worth to the Port of Houston. (*Id.*) To get the forklift onto his truck trailer, Fischer lowered the front neck of the trailer to the ground, creating a ramp, and drove the forklift onto his trailer. (*Id.* at 10.) Fischer stated that he "didn't notice anything wrong" with the parking brake, and the forklift "didn't roll." Fischer drove his trailer to the Port of Houston, drove the forklift off his trailer, and parked it in a designated location. (*Id.*)

Shippers Stevedoring then loaded the forklift onto the Saudi Tabuk as "roll-on-roll-off" cargo. (*Id.*) Typically, a stevedore will drive the forklift onto the inclined ramp and park it. Next, the "lashing gang" chains the forklift. (Doc. No. 229 at 2.) There is some dispute about whether Shippers Stevedoring chocked and lashed the forklift or simply lashed it. Although an employee of Shippers Stevedoring testified that every forklift loaded onto the Saudi Tabuk that day was lashed and chocked, Plaintiff avers that the forklift arrived in Baltimore unchocked. (Doc. No. 260-1 at 3.)

The vessel, M/V Saudi Tabuk, is owned by Bahri. The Chief Officer of the vessel, Krzysztof K. Zydowicz, checked the lashings and parking brakes of all wheeled cargo before departure from the port of Houston. (Doc. No. 229-9 at 2.) Although Mr. Zydowicz testifies that the lashings on the forklift were tight and the handbrake was set, he did not notice any chocks in

place under the wheels. (*Id.*; Doc. No. 275-2 at 3.) Prior to the vessel's arrival in Baltimore, Bahri provided Ports America with a stowage plan that called for the shifting of certain roll-on-roll-off cargo from the garage to the weather deck. (Doc. No. 229 at 3.) The forklift was one of these items, and the injury occurred when Plaintiff and the other longshoremen attempted to unlash the forklift in order to move it to the weather deck.

After the accident, Bahri immediately requested an inspection by American Marine & Cargo, Inc., a company that conducts marine and cargo surveys. The inspector conducted a brake test and wrote in the report ("Marine Cargo Report") that the parking brake "is not functioning, Brake cables had stretched to max beyond further adjustment." (Doc. No. 276-2 at 6.) Regarding the cause of the incident, the report concluded:

> Parking brake (which is the only brake when the forklift is not running) failure is apparent cause of subject incident compounded by improper method of lashing removal by stevedores. It is apparent that subject unit was shipped with its parking brake not functioning. Stevedores at Houston apparently did not realize its brake failure when received since it was on a flat ground. When loaded/secured on a steep ramp, apparently lashing chains were placed with its brake pedal applied and therefore stevedore may not have realized any issues with its parking brake failure. Vessel was not aware of any issues since none reported in Houston and unit did not move during voyage because it was in lashed condition and parking brake was in locked position. (*Id.*)

Before continuing on its journey to Saudi Arabia, a sign was placed on the forklift indicating that it had no brakes, and a similar entry was made in the bill of lading. The forklift was loaded onto a flatbed, lashed and chocked. (Doc. No. 275-3 at 9; Doc. No. 275-11 at 10.)

## II.   LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party.

*Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  The court can consider any evidence in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Crawford*, 234 F.3d at 902.

The party moving for summary judgment bears the burden of demonstrating the absence of a genuine dispute of material fact.  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001).  If the moving party meets this burden, the non-moving party must go beyond the pleadings to find specific facts showing that a genuine issue of material fact exists for trial.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex*, 477 U.S. at 322.

## III.   ANALYSIS

### A.  Longshore and Harbor Workers' Compensation Act Claims

Plaintiff alleges negligence under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950, against all of the Defendants in this case. Five Defendants move for summary judgment on this claim. In his responses, Plaintiff concedes that he cannot make out a negligence claim under the LHWCA against IronPlanet and Shoppa's, but he maintains the claim against Fischer, Bahri, and Toyota.

"The LHWCA was created to establish a compensation scheme for injured maritime workers." *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 289 (5th Cir. 2008). "An injured worker may bring an action under the LHWCA against his employer for workers' compensation, *see* § 904, and against an owner for its vessel's negligence, *see* §905(b)." *Id.* The Supreme Court

has held that the LHWCA expressly pre-empts all other claims against the employer and the vessel owner, but "expressly *preserves* all claims against third parties." *Norfolk Shipping & Drydock Corp. v. Garris*, 532 U.S. 811, 818 (2001). Specifically, "Section 933 preserves and codifies a maritime worker's common law right to pursue a negligence claim against a third party that is not the employer or a coworker." *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d at 292. However, the LHWCA "does not create a cause of action nor establish a third party's liability for negligence." *Id.*

### a. Fischer

Defendant Fischer argues that the LHWCA negligence claim against him should be dismissed because Fischer is a third party, and the LHWCA does not create a cause of action against third parties. (Doc. No. 194-2 at 3.) In response, Plaintiff states that Count I of his complaint, which alleges "LHWCA Negligence (Against All Defendants)," served as an "indication that Count I was a negligence count being brought pursuant to maritime law," as opposed to common law negligence alleged in Count III of the complaint. Noting the "potential for ambiguity based on the current reading of the active complaint," Plaintiff requests leave to amend his complaint to clarify that his LHWCA negligence claim, as against Fischer, is in fact a maritime negligence claim. Because Plaintiff concedes that negligence under the LHWCA does not apply to Fischer, that claim is dismissed.

Next, the Court must determine whether to grant Plaintiff's request to amend his complaint. Federal Rule of Civil Procedure 15(a)(2) provides that a court should grant leave to amend "when justice so requires." Although leave to amend shall be freely given, the existence of such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, futility of amendment, etc." may justify the denial of leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiff filed this lawsuit in 2013, and has been granted leave to amend his complaint three times. His most recent motion to amend was denied. (Doc. No. 241.) Discovery is complete, and the parties stand ready for trial pending the outcome of the dispositive motions. Plaintiff gives no justification for further amendment at this late date, stating only that "justice requires leave to amend to the extent that this Honorable Court determines that the complaint remains unclear regarding the jurisdiction by which the various counts have been brought." (Doc. No. 203-1 at 8.) But Plaintiff mischaracterizes the problem with his pleading. The jurisdiction is clear in Count I of his pleading, as the LHWCA is a federal statute that conveys with it federal question jurisdiction. 28 U.S.C.A. § 1331. The problem is that the LHWCA does not create a negligence cause of action against third parties. While the LHWCA preserves a worker's right to pursue a negligence claim, it "does not create a cause of action nor establish a third party's liability for negligence." *McLaurin*, 529 F.3d at 292. Plaintiff could have asserted a maritime negligence claim against Fischer, but he asserted negligence under the LHWCA. ("The Defendants are 'person[s] other than an officer or employee of the employer' as stated in 33 U.S.C. § 933 and are subject to liability *under the Act*." Doc. No. 207 ¶ 23, emphasis added.)

Thus, for three years Plaintiff has asserted LHWCA negligence against Defendants in the case, and for three years Defendants have constructed their defenses around this claim. Plaintiff has had time and opportunity to clarify his claims and add new claims. To allow Plaintiff to amend his complaint at this time would unfairly prejudice Defendants. Furthermore, Plaintiff gives no compelling reason justifying his previous failures to rectify this mistake. Thus, the Court denies Plaintiff's request to amend his complaint for a fourth time.

### b.  Toyota

In its motion for summary judgment, Toyota states that Plaintiff "asserts claims for maritime and common law negligence." (Doc. No. 249 ¶ 1.) While later acknowledging that "part of Plaintiff's claims against TMCC [Toyota Motor Credit Corporation] are premised on the Longshore and Harbor Workers' Compensation Act," Toyota also apparently believes that Plaintiff has asserted maritime negligence against it. (*Id.* at ¶ 2.) But Plaintiff's live complaint belies its assertion. As described above, Count I of Plaintiff's complaint is titled: "Longshore and Harbor Worker's Compensation Act Negligence (Against All Defendants)." At no point in this count does Plaintiff allege general maritime negligence outside the purview of the LHWCA. The only other counts in the complaint allege breach of implied warranty and common law negligence. Because maritime negligence is not asserted in Plaintiff's complaint, the Court disregards that portion of Toyota's motion. However, Toyota also moves for summary judgment with regard to the LHWCA negligence claim.

Toyota argues that "TMCC is not subject to liability under the LHWCA in view of the fact pattern of this case: TMCC is not a shipper, ship owner, stevedore, or seaman, as those terms are defined or used in the LHWCA." As discussed above, § 905(b) of the LHWCA creates an exclusive claim for relief in negligence against the vessel owner, and § 933(a) of the LHWCA preserves a worker's right to sue third parties under common law negligence. However, Plaintiff asserts a negligence claim under the LHWCA against Toyota, a third party. Because the LHWCA does not create a negligence claim against third parties, Plaintiff's claim is dismissed.

### c.  Bahri

Plaintiff asserts a LHWCA negligence claim against Bahri, the owner of the vessel on which Plaintiff was injured. Section 905(b) of the LHWCA provides a claim for relief in

negligence against the vessel owner. In his complaint, Plaintiff asserts that Bahri owed a turnover duty to Plaintiff as defined by 33 U.S.C. § 905(b). (Doc. No. 207 ¶ 25.) Defendants breached this duty by allowing the forklift to be turned over to the longshoreman, including Plaintiff, without first exercising due care to insure that it was in such a condition that a longshoreman exercising the ordinary standard of care could carry on cargo operations with reasonable safety." (*Id.*) Plaintiff also claims that Bahri owed him a "general duty of reasonable care and duty to warn." (*Id.* ¶ 27.) These duties were breached, writes Plaintiff, when Bahri failed to use reasonable care to provide and maintain a safe place to work, failed to promulgate and enforce reasonable rules and regulations, failed to provide adequate safety instruction and supervision, failed to utilize available safety materials, such as chocks, failed to notify Plaintiff of the defective emergency brake, and various other lapses. (*Id.* ¶ 28.)

A shipowner owes three narrow duties to longshoremen: (1) a turnover duty, (2) a duty to exercise reasonable care in the areas of the ship under the active control of the vessel, and (3) a duty to intervene. *Scindia Steam Nav. Co., Ltd. v. De Los Santos*, 451 U.S. 156, 167 (1981). "The turnover duty applies to the shipowner's obligation before or at the commencement of the stevedore's activities." *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 392 (5th Cir. 2008). The duty creates two responsibilities: "a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert stevedore can carry on stevedoring operations with reasonable safety," and "a duty to warn the stevedore of latent or hidden dangers which are known to the vessel owner or should have been known to it." *Id.* The duty to warn of hidden dangers is narrow, and does not include dangers which are either: (1) open and obvious or (2) dangers a reasonably competent stevedore should anticipate encountering. *Id.* The Fifth Circuit has held that a defect is considered open and obvious if the

longshoreman knew of the defect. *Johnson v. Volunteer Barge & Transp., Inc.,* No. CV 15-2630, 2016 WL 5115417, at *3 (E.D. La. Sept. 21, 2016). In addition, the Fifth Circuit has extended the "open and obvious" defense to apply to a claim based on the general duty to exercise ordinary care in turning over the ship. *Kirksey*, 535 F.3d at 394.

The Supreme Court held in *Scindia Steam* that "the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." 451 U.S. at 172. This means that "the shipowner is not liable to the longshoremen for injuries caused by dangers unknown to the owner and about which he had no duty to inform himself." *Id.*

In this case, it is clear that two dangerous conditions, apart from the potential negligence of Plaintiff and his longshoremen gang (for which Bahri cannot be held liable), led to Plaintiff's injury: (1) the forklift's defective parking brake and (2) the lack of chocks on the forklift. Thus, if Plaintiff can raise a genuine issue of material fact regarding Bahri's knowledge of and duty to warn about either of these conditions, Bahri's motion must be denied.

Bahri contends that it did not know the forklift had a defective parking brake. (Doc. No. 229 at 8-9.) Plaintiff has not presented any evidence that negates this contention. There is no evidence that the Houston stevedore, Shipper's, encountered a problem with the forklift. (*Id.* at 11.) Even if it had, there is no evidence that Shipper's informed Bahri about the problem. (Marine Cargo Report, Doc. No. 276-2 at 6, "Vessel was not aware of any issues since none reported in Houston and unit did not move during voyage because it was in lashed condition and parking brake was in locked position.") Furthermore, Bahri had no duty to discover whether the parking brake functioned. *Scindia Steam*, 451 U.S. at 172. The Court finds no genuine issue of material fact regarding Bahri's knowledge of the defective brake.

11

However, Plaintiff also alleges that Bahri breached its duty to exercise ordinary care when it turned over the vessel carrying a forklift that was not chocked. In fact, Plaintiff contends that "a member of the vessel's crew removed the chocks." (Doc. No. 260-1 at 3.) In support of this theory, Plaintiff cites to the deposition of Thomas Reyes, an employee of Shipper's, who stated that every forklift loaded onto the Saudi Tabuk was chocked. (*Id.*) If the forklifts were chocked when they were loaded in Houston, but they arrived in Baltimore without chocks, Plaintiff concludes that "a member of the vessel's crew must have removed the chocks during the vessel's voyage." But in his deposition, Thomas Reyes stated that he did not remember the loading of the forklift in this case. (Doc. No. 261-1 at 13.) His testimony regarding the chocking of forklifts was based solely on Shipper's policy for loading wheeled machines onto vessels. (Doc. No. 229-14 at 2.) Furthermore, Mr. Zydowicz, an employee of Bahri, testified that he did not notice any chocks in place under the wheels before departure from Houston. (*Id.*; Doc. No. 275-2 at 3.) Plaintiff presents no further evidence to support the assertion that the vessel's crew removed the chocks on the forklift during the voyage. "The non-movant's burden cannot be satisfied by conclusory allegations [or] unsubstantiated assertions." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Here, the record taken as a whole does not create a genuine issue of fact regarding the vessel's interference with the chocks.

Even if Plaintiff could present a genuine issue of fact regarding the vessel's interference with the chocks, Bahri still would not be liable. As described above, the Fifth Circuit has extended the "open and obvious" defense to the general duty to exercise ordinary care in turning over the ship. *Kirksey*, 535 F.3d at 394. In *Kirksey*, a longshoreman was injured while unloading cargo and filed a personal injury claim against the vessel. *Id.* The district court found that the vessel's cargo—coils and steel pipe—had been poorly stowed by the loading stevedore, and this

dangerous condition had been exacerbated by heavy seas encountered during the voyage. *Id.* at 390-91. The plaintiff was badly injured when the longshoremen at the receiving port attempted to unload the poorly stowed cargo. *Id.* at 391. It was uncontested that the plaintiff's employer was fully aware of the hazardous condition of the cargo stow, but the district court still found that the vessel owner failed to exercise reasonable care to have the vessel in such condition that an expert and experienced stevedore could safely unload the vessel. *Id.* at 391-92. The Fifth Circuit overturned the district court, finding that the considerations leading the Supreme Court to permit shipowners to assert an "open and obvious" defense to a failure to warn claim in *Howlett* "strongly support making the same defense available to the shipowner defending against a claim based on the general failure to provide a safe ship based on defects in the stow." *Id.* at 393-94.

It is uncontested that the wheels of the forklift were unchocked when Plaintiff's gang approached the machine, and that Plaintiff was aware of the unchocked condition. Thus, to the extent that this condition poses a danger, it is one that is "open and obvious." For an open and obvious defect, the vessel is "entitled to assume that a competent stevedore will be able to identify and cope with defects in the stow." *Id.* at 394. For these reasons, the Court finds no genuine issue of material fact regarding Bahri's breach of its duty to exercise ordinary care in turning over the vessel.

Plaintiff also alleges that Bahri breached its duty to warn—the second duty encompassed in a vessel's turnover duty—when it failed to inform the stevedore of the forklift's broken parking brake. (Doc. No. 207 ¶ 27.) The vessel has a duty to warn the stevedore of latent or hidden defects that are, or should be, known to the vessel. *Kirksey*, 535 F.3d 388. As explained above, Plaintiff has failed to present a genuine issue of material fact regarding Bahri's knowledge of the forklift's defective brake. Furthermore, Bahri did not have a duty to discover

the defective brake. *Scindia Steam*, 451 U.S. at 172. Because the vessel cannot warn the stevedore of a defect that is not known, or should not have been known, by the vessel, Plaintiff's allegation fails. The Court finds no genuine issue of material fact regarding Bahri's breach of its duty to warn. For these reasons, Plaintiff's LHWCA negligence claim against Bahri is dismissed.

### B.  Breach of Implied Warranty Claims

In Count II of his complaint, Plaintiff alleges a breach of implied warranty claim against all Defendants. Five Defendants move for summary judgment on this claim. In his responses, Plaintiff concedes that he cannot make out a breach of implied warranty claim against IronPlanet and Shoppa's, but he maintains the claim against Fischer, Bahri, and Toyota.

#### a.  Fischer

In the complaint, Plaintiff states that Defendants "impliedly warranted to conduct cargo operations with reasonable safety" and "impliedly warranted the cargo and ship's equipment was not dangerous and was free from latent defects that would threaten the safety of a stevedore exercising the ordinary standard of care." (Doc. No. 207 ¶¶ 33-34.) Plaintiff does not allege the source of these implied warranties, but Fischer, in his motion for summary judgment, looks to Texas law, and Plaintiff does not dispute this assumption in his response. As such, the Court refers to Texas law for the source of the alleged implied warranties.

"[I]mplied warranties are created by operation of law and are grounded more in tort than in contract." *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984). Texas courts recognize an "implied warranty for services only when the services relate to the repair or modification of existing tangible goods or property." *Rocky Mountain Helicopters, Inc. v. Lubbock Cty. Hosp. Dist.*, 987 S.W.2d 50, 52–53 (Tex. 1998). In *Rocky Mountain Helicopters*, the Supreme Court of Texas declined to extend this implied warranty to warrant that

14

services incidental to helicopter maintenance would be performed in a good and workmanlike manner. *Id.* at 53. The Court explained that an implied warranty that services will be performed in a good and workmanlike manner "may arise under the common law when public policy mandates," but did not find a "demonstrated, compelling need" to do so "when other adequate remedies are available to the consumer." *Id.* at 53.

Although Plaintiff argues that public policy mandates that this Court extend the implied warranty in this case, the Court disagrees. Plaintiff accurately states that *"a compelling need for an implied warranty exists when there are no other adequate remedies available"*, and that remedies may not be adequate "when, for example, privity or reliance requirements or the difficulty of assigning responsibility prevent the wronged consumer from obtaining redress." But even assuming, *arguendo*, that a compelling need for an extension of the implied warranty existed in this case, Plaintiff still could not defeat summary judgment. Plaintiff is not a consumer of goods or services in this case, yet the implied warranties he invokes are specifically designed for consumers. *See, e.g.*, *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987) (emphasis added) ("We hold that an implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner is available to *consumers* suing under the DTPA"); *Rocky Mountain Helicopters, Inc. v. Lubbock Cty. Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex. 1998) (emphasis added) ("There is no compelling need for an implied warranty when other adequate remedies are available to the *consumer*," and "Remedies may not be adequate when, for example, privity or reliance requirements or the difficulty of assigning responsibility prevent a wronged *consumer* from obtaining redress.")

Plaintiff does not argue that he is a consumer for the purposes of these implied warranties, but instead asserts that "Texas law recognizes this remedy as available due to 'privity

or reliance requirements.'" (Doc. No. 203-1 at 10-11, citing *Rocky Mountain Helicopters*, 987 S.W.2d at 53.) According to Plaintiff, because he relied on the Defendant to provide notice that the forklift was defective, "this remedy remains available to the Plaintiff." (*Id.* at 11.) But Plaintiff misreads *Rocky Mountain Helicopters*. In the section cited by Plaintiff, the Supreme Court of Texas explained that a remedy may not be adequate, thus justifying an extension of the implied warranty for services, if that remedy had privity or reliance requirements that the consumer could not meet, and that would thus bar a wronged consumer from obtaining redress. The court was not stating, as Plaintiff contends, that any showing of reliance by an injured person should lead to an extension of the implied warranty.

Implied warranties for services are created for consumers. Because Plaintiff is not a consumer, they do not apply to him. The breach of implied warranty claim against Fischer is therefore dismissed.

### b. Bahri & Toyota

Bahri takes aim at Plaintiff's implied warranty claim with a different argument. In its motion for summary judgment, Bahri argues that there is no implied warranty for Bahri to breach because "the LHWCA expressly pre-empts all other claims" as to both the longshoreman's employer and the vessel. (Doc. No. 229 at 25.) Toyota adopts and incorporates Bahri's argument on this matter. (Doc. No. 249 ¶ 22.) Bahri and Toyota misread the LHWCA. As explained by the Fifth Circuit in *McLaurin v. Noble Drilling*, "[i]f a maritime worker recovers against a vessel under § 905(b), then he may not also sue the vessel in tort." 529 F.3d at 293. But if the worker cannot recover under § 905(b) because they cannot state a cognizable claim for vessel negligence, "the language of § 905(b) does not preempt their state-law claim against [the vessel owner] as a third-party tortfeasor." *Id.* Here, the Court has already determined that Plaintiff

cannot state a cognizable claim for vessel negligence under § 905(b) of the LHWCA. Therefore, Plaintiff is free to allege any state-law claims he may have against the vessel owner.

However, Plaintiff's breach of implied warranty claim against Bahri and Toyota still fails. Plaintiff cannot point to any implied warranties from shipowners to stevedores recognized in federal law, and implied warranties in Texas are limited to consumers.

Although Plaintiff does not identify the implied warranty allegedly breached by Bahri as a warranty of seaworthiness, the Plaintiff's complaint describes just that: "Defendant impliedly warranted the cargo and ship's equipment was not dangerous and was free from latent defects that would threaten the safety of a stevedore exercising the ordinary standard of care." (Doc. No. 207 ¶¶ 33-34, *cf. Scindia Steam*, 451 U.S. at 165 ("Proof of unseaworthiness required no proof of fault on the part of the shipowner other than an unsafe, injury-causing condition on the vessel.")) But the warranty of seaworthiness was eliminated in the 1972 Amendments to the LHWCA. *Scindia Steam*, 451 U.S. at 165 ("The 1972 Amendments, particularly by adding § 905(b), radically changed this scheme of things....the longshoreman's right to recover for unseaworthiness was abolished.")

It is unclear what type of implied warranty Plaintiff is invoking against Toyota, but any state-law implied warranties for services are limited to consumers, as explained above. For these reasons, Plaintiff's implied warranty claims against Bahri and Toyota are dismissed.

### C.  Common Law Negligence Claims

In Count III of his complaint, Plaintiff asserts a common law negligence claim against Fischer, Shoppa's, IronPlanet, Toyota, and three other Defendants. Fischer, Shoppa's, IronPlanet and Toyota move for summary judgment. As a preliminary matter, the Court must resolve some confusion regarding the jurisdictional basis for the claim. Defendant Fischer argues that, because

Plaintiff elected to have his negligence claim heard in maritime, the only negligence claim Plaintiff can assert against Fischer is maritime negligence. (Doc. No. 194-2 at 5.) Defendant IronPlanet asserts that federal maritime law governs this count because the substantive law governing common law remedies must be the general maritime law. (Doc. No. 257-2 at 15-16.) Defendants Shoppa's and Toyota, however, acknowledge a distinction between maritime negligence and common law negligence in their motions for summary judgment. (Doc. Nos. 252 at 9 & 249 at 2.)

"Generally, a plaintiff may elect to bring a maritime *in personam* action (1) 'in admiralty,' or (2) 'at law.'" *Linton v. Great Lakes Dredge & Dock Co.*, 964 F.2d 1480, 1487 (5th Cir. 1992) (citation omitted); *see also Bodden v. Osgood*, 879 F.2d 184, 186 (5th Cir. 1989) ("A plaintiff with a claim cognizable in the district court's admiralty/maritime jurisdiction and also cognizable in another basis of jurisdiction may invoke whichever jurisdiction he desires."). If the plaintiff proceeds "at law," he can sue in federal court "if there exists an independent, nonadmiralty basis of jurisdiction." *Id.* Plaintiff's Third Amended Complaint does not explicitly invoke diversity or supplemental jurisdiction, but the Court finds that Plaintiff did not intend to invoke admiralty jurisdiction for all three counts in his Complaint, and further finds that the Court has diversity jurisdiction over the common law negligence claim.

Plaintiff's Complaint begins by stating, "[t]his matter is in part being brought under the admiralty and maritime jurisdiction of the court pursuant to 28 U.S.C. § 1333. This is an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure Rule 9(h)…" (Doc. No. 207 ¶ 2.) Plaintiff goes on to state that "[t]he causes of action asserted in this Complaint arises [sic] under the General Maritime Law of the United States and the common law." (*Id.* at ¶ 7.) This suggests that Plaintiff distinguished between admiralty jurisdiction and "at

law" jurisdiction, which he was invoking by titling Count III "Negligence Pursuant to Common Law." *Linton*, 964 F.2d at 1484 (Plaintiff "may also bring suit, at his election, in the 'common law' court--that is, by ordinary civil action in state court, or in federal court without reference to 'admiralty,' given diversity of citizenship and the requisite jurisdictional amount.") Furthermore, Plaintiff requests a trial by jury, which would not be available to him in an admiralty action, but is available under other bases of jurisdiction. *Bodden*, 879 F.2d at 186. For these reasons, the Court finds that Plaintiff wished to bring his negligence claim "at law."

However, an alternate basis for federal court jurisdiction must exist, since the negligence claim is not brought under the Court's admiralty jurisdiction. *Linton*, 964 F.2d at 1487. To this end, Plaintiff identifies himself as a citizen of Maryland, and identifies the citizenship of all defendants. (Doc. No. 207 at 3-7.) Notably, the only defendant that would destroy complete diversity, Bahri, is the only defendant not listed in the common law negligence claim. (*Id.* at 17.) Furthermore, Plaintiff demands damages well in excess of the $75,000 amount in controversy minimum. (*Id.* at 21.) Thus, Plaintiff's "at law" negligence claim may be maintained in this Court under diversity jurisdiction. *Cf. Smith v. City of Chicago*, 992 F. Supp. 1027, 1032 (N.D. Ill. 1998) (dismissing plaintiff's state law claim because plaintiff failed to identify the citizenship of himself and the defendants, and failed to show that the amount in controversy exceeds $75,000.).

Because Plaintiff's negligence claim is brought under the Court's diversity jurisdiction, the claim can be tried to a jury. *Linton*, 964 F.2d at 1487. In Shippers' motion to strike Plaintiff's jury demand, Shippers states only that "diversity jurisdiction does not apply." However, Plaintiff's Complaint clearly indicates that Plaintiff is a citizen of Maryland, and Shippers is a citizen of Texas. (Doc. No. 207 ¶¶ 1, 10.) Because the claim is brought under the common law

pursuant to the Court's diversity jurisdiction, Plaintiff is entitled to a jury trial and Shippers' motion to strike Plaintiff's jury demand is denied.

Although the basis for federal court jurisdiction is diversity, federal maritime law will still govern the substantive law applied to the case. *Edynak v. Atl. Shipping Inc. Cie. Chambon Maclovia S.A.*, 562 F.2d 215, 221 (3d Cir. 1977) (affirming the application of federal maritime law in negligence claim brought by longshoreman under the court's diversity jurisdiction.). Common law principles of negligence guide the analysis of a maritime tort case. *Casaceli v. Martech Int'l, Inc.*, 774 F.2d 1322, 1328 (5th Cir. 1985). "To state a claim for relief under maritime law, 'the plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Canal Barge Co. v. Torco Oil Co*., 220 F.3d 370, 376 (5th Cir. 2000)).

The determination of the defendant's duty is a question of law for the court. *Id*. Generally, a defendant owes the plaintiff a duty of ordinary care under the circumstances. *Id*. To establish the existence and scope of a duty, the court considers the foreseeability of the harm suffered by the plaintiff. *Id*. Harm is foreseeable "if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission." *Consol. Aluminum Corp. v. C.F. Bean Corp*., 833 F.2d 65, 68 (5th Cir. 1987). However, if the causal connection between the negligent act and the resulting harm is too attenuated, it falls outside the scope of risk created by that act and is unforeseeable as a matter of law. *In re Great Lakes*, 624 F.3d at 212.

### a. Fischer

Defendant Fischer transported the forklift from Fort Worth, Texas to La Porte, Texas on his trailer. (Doc. No. 194-2 at 8.) In transporting the forklift, Fischer states that he noticed nothing unusual about the forklift, and "cannot say one way or the other whether the parking brake was broken or whether it was operational." (Doc. No. 208-1 at 2.) In his affidavit, Fischer explains that he drove the forklift onto his trailer and "lowered the mast all the way down to where the forks touched the bottom of my trailer, to better secure the forklift." *Id.* He then engaged the parking brake, stepped out of the machine, and strapped down the forklift. *Id.* Thus, Fischer did not engage or disengage the parking brake while the forklift was on an incline.

Fischer's testimony comports with the experience of Shoppa's sales representative Omar Shai, who testified that he drove the forklift from its storage place to "the yard" for the inspector from IronPlanet, and that the parking brake worked at that time. (Doc. No. 257-5 at 11.) In turn, the inspector from IronPlanet, Evan Moser, put in his inspection report that the parking brake stopped the forklift while rolling. (Doc. No. 257-17 at 4.) The experiences of Fischer, Shai, and Moser align with the Toyota Inspection Report, which noted that while the parking brake was "Not Operational," it still had some tension. (Doc. No. 276-8 at 2.) Plaintiff provides no evidence to disprove the testimony of these three men, nor does Plaintiff controvert the finding in the Toyota Inspection Report that the parking brake still had some tension.

In his response to Fischer's motion for summary judgment, Plaintiff argues that the "defect in the forklift's brakes were [sic] discovered as early as (two months prior to Defendant's transportation of same) March 12, 2013…Consequently, Defendant knew or should have known upon encountering the forklift and preparing it to be hauled…of the vehicle's defect." (Doc. No. 203-1 at 3.) Yet it is undisputed that Fischer was not informed about the Toyota Inspection

Report that noted the issue with the brake. Furthermore, Fischer's testimony that he noticed nothing wrong with the forklift's parking brake is reasonable, given Fischer's limited use of the brake on flat ground and his complete lack of use of the brake on an incline. Plaintiff provides no reason to doubt Fischer's testimony.

The facts of this case are similar to those considered in *Di Gregorio v. N.V. Stoomvaart v. Universal Terminal & Stevedoring*, 411 F.Supp. 331 (S.D.N.Y. 1975). There, a longshoreman who was unloading cargo from a vessel was injured when a crate containing antennas collapsed under him. *Id.* at 333. The longshoreman brought suit, alleging the unseaworthiness of the vessel and negligence on the part of third-party defendants. *Id.* The longshoreman suggested that liability might attach to the shipper because "a trucker employed by [the shipper] assumed control of the crates after delivery by [the packager.]" *Id.* at 336. However, the court found that "the mere taking of title or control by [the shipper]'s agents does not mean that these agents were negligent…There was no evidence to indicate that they…knew or should have known of inadequate battens inside the crates or other defect in the packing." *Id.*

Similarly, the fact that Fischer was in possession of the forklift while transporting it to the vessel does not mean that he was negligent, in part because there is no evidence to indicate that he knew or should have known that the parking brake was compromised. Because Plaintiff can present no evidence to contradict Fischer's testimony, the Court finds that Fischer was unaware of any problem with the forklift's parking brake, and as such had no duty to flag the issue. As a result, Plaintiff's negligence claim against Fischer is dismissed.

### b. Shoppa's

Shoppa's moves for summary judgment on the grounds that the harm to Plaintiff was not foreseeable, and any connection between Shoppa's conduct and the resulting harm is too

attenuated. (Doc. No. 252 ¶ 6.) Shoppa's role with regard to the forklift was twofold. First, Shoppa's considered buying the forklift from Toyota, and as a result had the forklift inspected. Ultimately, Shoppa's decided not to purchase the forklift, because "the cost of repairs combined with the cost to purchase the Forklift was too high." (*Id.*) Shoppa's, as a Toyota dealer, was given access to the Toyota Inspection Report that noted the non-operational parking brake, but claims that the brake was working while it had the forklift—"it just needed adjustment." (*Id.*) Second, Shoppa's temporarily stored the forklift on its lot while Toyota found another buyer. When the inspector from IronPlanet came to inspect the forklift, Omar Shai, a salesperson for Shoppa's, drove the forklift from its storage place to "the yard". (Doc. No. 257-5 at 11.) Omar Shai testified that the parking brake functioned when he did this. (*Id.*)

Unlike Fischer, who had no knowledge of any inspections conducted on the forklift, Shoppa's had access to the Toyota Inspection Report noting the parking brake as non-operational. However, Shoppa's also conducted its own inspection of the forklift, which found that the brake simply needed adjustment, and one of Shoppa's employees personally drove, and successfully parked, the forklift. Thus, there may be a triable question of fact regarding Shoppa's knowledge of the forklift's brake problem. Regardless, the Court cannot find that Shoppa's had a duty to Plaintiff, even if a jury were to find that it knew about the brake's condition.

In *Garcia v. Sunbelt Trading, Inc.*, 2003 WL 179763, the Court of Appeals of Texas, San Antonio, considered a similar situation. Garcia was a longshoreman injured while unloading cargo from a vessel. *Id.* at 1. He brought suit against the buyer of the cargo, Sunbelt (which held title to the cargo at the time of the incident.) The Court of Appeals affirmed the trial court's dismissal of the suit, finding that "Sunbelt was not involved in the manufacturing of the steel rods or the lifting straps or in the packaging of the bundles, nor was Sunbelt involved in the

loading and transportation of the bundles." *Id.* at *2. As a result, Sunbelt owed no duty to Garcia. *Id.*

Similarly, Shoppa's was not the manufacturer, owner, seller or buyer of the forklift; Shoppa's was not involved in any repairs of the forklift, nor was it responsible for transporting or loading the forklift onto the vessel. Shoppa's was a potential buyer who, as a Toyota dealer, stored the forklift on its lot temporarily. This peripheral relationship to the machine does not suffice to create a duty to Plaintiff. Therefore, Plaintiff's negligence claim against Shoppa's is dismissed.

### c.   IronPlanet

IronPlanet moves for summary judgment because Plaintiff has not established that IronPlanet "breached a duty owed to Plaintiff to inspect the forklift or to warn Plaintiff about forklift defects." (Doc. No. 257-1 at 2.) IronPlanet is an online auction company that had a contract with Toyota to sell Toyota's used machines. The contract provided that IronPlanet acquired no ownership interest in the units. (Doc. No. 257-2 at 2.) Furthermore, IronPlanet was not one of Toyota's dealers, and as such was not given access to the Toyota Inspection Report.

However, IronPlanet does provide a limited inspection of some of the equipment sold on its website. (*Id.* at 4.) This inspection is "solely for the purpose of reporting on the visible condition of the equipment's major systems and attachments," and the buyer is informed of the limited nature of the inspection. (*Id.* at 4.) IronPlanet employee Evan Moser conducted this inspection on the forklift in question. He testified that he conducted a "low functionality check in a limited space," which entails checking whether "the unit start[s], does it go forward, backward, does it go through its function that it's supposed to go through at a low speed with no load in a limited space on flat ground." (Doc. No. 257-17 at 4.) The IronPlanet report indicates that the

parking brake "stopped the machine while rolling." (*Id.* at 6.) The IronPlanet Report is not alone in this finding—as described above, the Toyota Inspection Report noted that the parking brake had tension (though how much is not specified), and Fischer and Shai also testified that the parking brake seemed to be functioning when they engaged it on flat ground.

Plaintiff, in his response, disputes the accuracy of IronPlanet's report, citing to the Toyota Inspection Report indicating that the parking brake was "Not Operational." (Doc. No. 275-1 at 15.) Because of the Toyota Incident Report, claims Plaintiff, "IronPlanet knew or, at the very least, should have known of the forklift's parking brake deficiency." However, Plaintiff ignores all of the evidence described above indicating that the parking brake had tension and was functioning on flat ground. Plaintiff asks the Court to accept the Toyota Inspection Report's representation that the brakes were not operational, while disregarding the notation immediately below indicating that the brakes had tension, as well as the experience of three different individuals who used the forklift after the Toyota Inspection Report and before the Plaintiff's injury.

The Court does accept, for purposes of these motions for summary judgment, that the Toyota Inspection Report indicated that the parking brake was not operational, but that it had some tension. However, IronPlanet did not have access to this report, and relied solely on the inspection conducted by Evan Moser, who found that the parking brake stopped the forklift on flat ground. Plaintiff presents no other evidence indicating that IronPlanet knew or should have known that the parking brake was defective. Therefore, the Court finds that IronPlanet was not on notice of any problem with the forklift's parking brake, and had no duty to flag the issue. Accordingly, Plaintiff's negligence claim against IronPlanet is dismissed.

### d. Toyota

Finally, Toyota argues that its motion for summary judgment should be granted because the harm to Plaintiff was not foreseeable and there was no causal connection between Toyota's act or omission and the harm to Plaintiff. According to Toyota, "TMCC disclosed the condition of the forklift to its dealers and wholesalers. The actual buyer who arranged to ship the forklift via ocean going vessel probably owed someone a duty, but TMCC did not owe a duty to anyone relative to the forklift after the auction sale." (Doc. No. 249 ¶ 5.) Toyota misses the point with this argument.

Although Toyota did disclose the Toyota Inspection Report to its dealers and wholesalers, as evidenced by its disclosure to Shoppa's, IronPlanet is not a Toyota dealer or wholesaler. As a result, the report was not disclosed to IronPlanet, and the buyer of the forklift saw only the IronPlanet Report indicating that the parking brake stopped the forklift on flat ground. Thus, of those involved in the sale of the forklift, Toyota is the only entity that had the benefit of the Toyota Inspection Report. Had Toyota disclosed this report to IronPlanet and/or the buyer, Toyota might be correct that the buyer would have had the duty to arrange for proper shipping of the forklift. But Toyota, as the manufacturer and seller of the forklift, failed to disclose the report indicating a potentially serious latent defect in the condition of the forklift. As such, the buyer, shippers, and stevedores approached their tasks without this knowledge.

However, Toyota further argues that "it was not foreseeable to TMCC that the auction buyer would transport the forklift via ship." (Doc. No. 249 ¶ 11.) In support of this claim, Toyota cites the affidavit of Rafael Arreola, Toyota's representative witness. Mr. Arreola states that after the sale of the forklift on IronPlanet's website, "Toyota was not informed as to what the buyer intended to do with the forklift, nor where or how the buyer intended to transport the forklift."

But foreseeability does not require that the exact sequence of events that produced an injury be foreseeable. *Bean v. Wal-Mart Stores, Inc.*, No. 4:07-CV-3201, 2008 WL 8082761, at *2 (S.D. Tex. Dec. 8, 2008). "Instead, only the general danger must be foreseeable." *Id.* (quoting *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996)). In this case, it was certainly foreseeable that equipment sold by IronPlanet would be transported via ship: the "About Us" section on IronPlanet's website states that "[o]ur sellers achieve more profitable sales through low transaction costs and better price realizations through a *global audience of buyers*." (IronPlanet.com,   http://www.ironplanet.com/about/about_us.jsp?kwtag=footer   (emphasis added.)) Toyota does not cite to any agreement between itself and IronPlanet limiting the location of potential buyers, or any other evidence indicating that Toyota was unaware that IronPlanet sold machinery to individuals around the world. As a result, the Court finds that it was foreseeable to Toyota that its machinery sold on IronPlanet would be shipped on a vessel.

Construing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that failing to disclose the Toyota Inspection Report or to flag the forklift in some way posed a risk. Consequently, Toyota's motion to dismiss with regard to Plaintiff's negligence claim is denied.

**IV.    CONCLUSION**

For the foregoing reasons, the Court concludes that the Motions for Summary Judgment filed by Fischer, Bahri, Shoppa's and IronPlanet must be **GRANTED**. Because these parties are dismissed from the lawsuit, the Motions to Strike Plaintiff's Jury Demand filed by Bahri and IronPlanet are **DENIED AS MOOT**, as are the Motions to Strike the Revised Report of Plaintiff's Testifying Expert filed by IronPlanet and Shoppa's. The Motions to Exclude the Testimony of Plaintiff's Expert, filed by IronPlanet and Shoppa's are also **DENIED AS MOOT**.

Shippers' Motion to Strike Plaintiff's Jury Demand is **DENIED**. Toyota's Motion for Summary Judgment is **PARTIALLY DENIED**.

**IT IS SO ORDERED.**

**SIGNED** on this the 10th day of November, 2016.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE